UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| PIONEER RESOURCES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 6: 04-465-DCR |
| V. | ) ) | |
| NAMI RESOURCES COMPANY, LLC, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Nami Resources Company, LLC's ("NRC") motion to disqualify Bruce A. Claugus and his firm, Claugus & Mitchell, LLP (hereafter, "Mr. Claugus") from representing Plaintiff Pioneer Resources Corporation and the related Third-Party Defendants (collectively, "Pioneer") in this matter. [Record No. 82] For the reasons discussed below, the Court will deny NRC's motion, without prejudice, and will refer the ethical issues raised by the motion to the Kentucky Bar Association for investigation and resolution in accordance with the regular procedures of the attorney disciplinary process.

**I.    BACKGROUND**

The parties have offered differing accounts of the events leading up to the motion to disqualify. However, for purposes of resolving this motion, the Court has based its conclusions upon the facts presented by NRC. Specifically, the Court has relied on the statements contained in the Affidavit of Mike Nami ("Mr. Nami"), the managing member of NRC, and the

representations of NRC's counsel that appear the memorandum in support of the motion to disqualify.

On March 22, 2006, Mr. Nami attended a settlement conference at the offices of Pioneer's counsel, Bruce A. Claugus ("Mr. Claugus") who is a member of the New York firm, Claugus & Mitchell, LLP. Mr. Nami was accompanied by NRC's in-house counsel, Judge Wilson, and Charles Stivers, NRC's accountant. During settlement discussions, Mr. Claugus asked to speak to Mr. Nami outside the presence of NRC's counsel. Mr. Wilson agreed and Mr. Nami proceeded to speak privately with Mr. Claugus. The parties dispute the nature of the conversations that occurred that day. Ultimately, however, Mr. Wilson rejoined the conversation and further settlement discussions continued in the presence of others present. This meeting did not result in a settlement.

The following day (March 23, 2006), Mr. Nami contacted Mr. Claugus by telephone with the intention of proposing a settlement offer on behalf of NRC. Mr. Claugus immediately told Mr. Nami that he could not speak with him outside the presence of his attorneys. However, Mr. Nami insisted on discussing the matter and proceeded to inform Mr. Claugus that he was not happy with the progress of the case. Nami also stated that he intended to fire NRC's counsel. Mr. Claugus then asked if Mr. Nami was also planning to fire Mr. Wilson and Howard Mann, NRC's local counsel. Mr. Nami responded that he had no intention of firing Mr. Wilson or Mr. Mann. According to NRC, Mr. Nami "then proceeded to tell Mr. Claugus how [his] attorneys had . . . calculated a settlement offer and how the particular monetary components of the settlement offer related to the matter in dispute in th[e] case." Mr. Claugus informed Mr. Nami

that he would think about the settlement offer and told him that he would call him back. Around 2:00 p.m. that same day, Mr. Claugus telephoned Mr. Nami and informed him that NRC's settlement offer was not acceptable. Less than five minutes later, Mr. Claugus again called Mr. Nami and proposed an alternate way for the parties to settle the case. He suggested that Mr. Nami contribute $1,300,000.00 and that Mr. Stivers and/or his accounting firm also contribute $1,300,000.00. Mr. Claugus indicated that it was his belief that the substantive issues in dispute were caused by Mr. Stivers and that NRC needed to add Mr. Stivers and another individual as third party defendants. The conversation ended at this point.

On March 28, 2006, counsel for NRC sent a letter to Mr. Claugus addressing the *ex parte* conversations between Mr. Claugus and Mr. Nami. Through this letter, counsel claimed that Pioneer's counsel violated his ethical responsibilities under the rules adopted by the Supreme Court of Kentucky. Moreover, NRC's counsel indicated that the company was considering filing a motion to disqualify. [Record No. 82, Ex. B] Mr. Claugus responded by letter on the same date, stating that the accusations against him were "groundless." [Record No. 82, Ex. C]

On April 12, 2006, NRC filed the motion to disqualify Mr. Claugus and his firm. Pioneer responded on April 26, 2006. In its memorandum, Pioneer cites a report prepared by Benjamin Cowgill, an attorney and expert in legal ethics, who Pioneer retained to offer an opinion on the ethical issue presented by the present motion. NRC filed its reply on May 10, 2006.

**II.     ANALYSIS**

Rule 83.3 of the Joint Local Rules for Civil Practice for the United District Courts of the Eastern and Western Districts of Kentucky provides that an attorney practicing before the court

is subject to discipline upon a showing that he or she is guilty of unprofessional conduct. L.R. 83.3. That Rule references the Rules of the Kentucky Supreme Court which govern professional conduct as a benchmark for determining whether a breach of an ethical obligations has occurred. *Id.* In addition to the disciplinary measures contained in Local Rule 83.3, it is axiomatic that a district court has inherent authority to disqualify an attorney as a sanction for professionally unethical conduct. *See Cavender v. U.S. Xpress Enters., Inc.*, 191 F. Supp. 2d 962, 965 (E.D. Tenn. 2002) (a court's authority to disqualify an attorney for unethical behavior derives from the local rules of the court and federal law). In a recent decision from another judge of this Court, the Court noted that:

> A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention. The power to disqualify an attorney, or attorneys, from a case is incidental to all courts, and a district court is obliged to consider unethical conduct by an attorney in connection with any proceeding before it. However, a trial court does not possess unfettered discretion to disqualify counsel. Furthermore, a violation of the rules of professional ethics does not automatically necessitate disqualification of an attorney. The extreme sanction of disqualification should only be utilized when there is a reasonable possibility that some specifically identifiable impropriety actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice. While motions to disqualify may be legitimate and necessary under certain circumstances they should be viewed with extreme caution for they can be misused as techniques of harassment.

*Allen v. Highlands Hosp. Corp.*, 2006 U.S. Dist. LEXIS 14426 (E.D. Ky. March 30, 2006) (citing *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865-866 (S.D. Ohio 2002) (internal quotations and citations omitted)).

NRC argues that the Court should disqualify Mr. Claugus and his firm from representing Pioneer in this matter because Mr. Claugus violated Kentucky Supreme Court Rule 3.130(4.2)

by communicating with Mr. Nami about issues related to this case, with full knowledge that NRC was represented by counsel, and without first obtaining the consent of NRC's counsel. According to NRC, this violation of the Rules of Professional conduct warrants immediate disqualification. In response, Pioneer argues that counsel for NRC consented to the *ex parte* communications and, therefore, there has been no violation of Rule 4.2. Alternatively, Pioneer states that even if counsel for NRC did not consent to all of the conversations between Mr. Claugus and Mr. Nami, NRC will not suffer any prejudice at trial from the communications. Thus, according to Pioneer, its counsel should not be disqualified from further participation in this action.

Rule 4.2 provides that when an attorney represents a party in a specific matter, that attorney may not communicate with any other represented party about the matter without the consent of opposing counsel. The rule does not apply to communications with parties concerning other matters. Ky. SCR 3.130, Rule 4.2, Cmt. 1. Inasmuch as "disqualification of a party's counsel . . . is a drastic remedy," an attorney should not be disqualified unless the *ex parte* communication was not collateral and there is a "possibility of prejudice at trial." *Shoney's, Inc. v. Lewis*, 875 S.W. 2d 514, 516 (Ky. 1994).

In *Allen* the court noted that "[t]he district court may decide a disqualification motion in accordance with the decisional standards applied to motions for summary judgment." *Allen*, 2006 U.S. Dist. LEXIS 14426, *12. In other words, the court should conduct a factual inquiry using affidavits and other evidence in the record as provided for in Rule 56 of the Federal Rules of Civil Procedure, so long as the district court does not undertake to decide disputed issues of

fact. *Id.* Similar to a motion for summary judgment, the movant bears the initial burden of presenting facts sufficient to show that disqualification is warranted. *Id.*; *Bartech Indus., Inc. v. Int'l Baking Co., Inc.*, 910 F. Supp. 388, 392 (E.D. Tenn. 1996). The rationale for allocating the burden of proof to the party seeking qualification "stems from a party's right to be represented by such counsel as that party chooses." *Carlsen v. Thomas*, 159 F.R.D. 661, 669 (E.D. Ky. 1994). An attorney should be disqualified "only when there is a reasonable possibility that some specifically identifiable impropriety actually occurred and, in light of the interest underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his own choice." *Id.* at 669 (quoting *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 257 (S.D. Ohio 1991)).

When confronted with a motion to disqualify counsel, a court must weigh the competing interests of requiring professional conduct by an attorney and permitting a party to retain the counsel of its choice. *Carlsen*, 159 F.R.D. at 664; *Kitchen*, 769 F. Supp. at 257. This requires the court to strike a proper balance between the public interest in safeguarding an orderly judicial process and the private interests of each party. *Id.* Therefore, in resolving the present motion, the Court must evaluate the alleged improper conversations between Mr. Claugus and Mr. Nami by balancing the interests of both parties.

Here, both parties concede that the initial conversation between Mr. Claugus and Mr. Nami that occurred during the settlement conference on March 22, 2006, was consented to by counsel for Nami and that there was no violation of Rule 4.2 with respect to this conversation.

In *University of Louisville v. Shake*, 5 S.W.3d 107 (Ky. 1999), the Kentucky Supreme Court held that courts should refrain from imposing the extreme remedy of disqualification of counsel when there has likely not been resultant prejudice due to the attorney's "unethical act." *Id.* at 107. With respect to the conversation that occurred the following morning, it is significant that Mr. Nami initiated the contact with Mr. Claugus, and that Mr. Claugus immediately told Mr. Nami that he should not be talking with him because NRC was represented by counsel. It also appears that Mr. Nami is a sophisticated businessman and is capable of understanding this directive from Mr. Claugus. However, despite his sophistication, Mr. Nami insisted upon continuing the conversation with Mr. Claugus, stating that "he was not entirely happy with the progress of th[e] case, and [] would fire [his] trial counsel if it were necessary to cause th[e] case to progress." [Record No. 82, Ex. A, Affidavit of Mike Nami]

According to NRC, "Mr. Claugus allowed Mr. Nami to explain the calculations that had been made by him and his attorneys to arrive at a settlement offer." [Record No. 82, p. 3] However, NRC has failed to offer evidence establishing that Mr. Claugus engaged in any form of overreaching conduct which pressured or manipulated Mr. Nami into making that disclosure. To the contrary, it appears that Mr. Nami chose to explain the calculations to Mr. Claugus in the interest of advancing settlement negotiations. In addition, the Court notes that there is no evidence indicating that Mr. Claugus obtained material evidence from Mr. Nami which he might offer at trial. In fact, based on the affidavit of Mr. Nami, it appears that subject matter of the communication related solely to settlement discussions which are not admissible at trial.

Therefore, based on all these considerations, the Court finds that NRC will suffer little prejudice, if any, as a result of Mr. Claugus continuing to represent Pioneer.

In contrast, the Court notes that Pioneer has a clear, specific, and demonstrable interest in retaining Mr. Claugus as its counsel of choice. Mr. Claugus has represented Pioneer in this matter since obtaining pro hac status on July 21, 2005. [Record No. 24] Because Mr. Claugus and his firm are presumably well-acquainted with all aspects of this litigation and because the discovery deadline is less than two weeks away and the trial is scheduled to commence in less than four months, the Court finds that Pioneer would suffer substantial hardship if required to substitute counsel at this late stage in the litigation. *See United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988) (stating that although the right to counsel of one's choice is not absolute, the right is an important one).

In addition to weighing the private interests of the parties, this Court must also consider the public interest in maintaining an orderly judicial process. *See Carlsen*, 159 F.R.D. at 664; *Kitchen*, 769 F. Supp. at 257. Federal courts have the inherent authority and the obligation to maintain public trust in the legal profession and the judicial process. *See D.H. Overmyer Co., Inc., v. Robson*, 750 F.2d 31, 33 (6th Cir. 1984). Considering all these factors, the undersigned concludes that NRC has not made a sufficient showing to warrant disqualification of counsel. However, assuming that NRC's version of the events are true, the Court finds that issues raised in the instant motion should be referred to the Kentucky Bar Association for an investigation and resolution in accordance with the regular procedures of the attorney disciplinary process.

### III. CONCLUSION

Accordingly, for the reasons discussed above, it is **ORDERED** as follows:

1. NRC's motion to disqualify counsel [Record No. 82] is **DENIED**, without prejudice;

2. NRC may renew the motion following the investigation and resolution of the ethical issues by the Kentucky Bar Association if such results warrant such renewal.

This 22nd day of May, 2006.

Signed By:
*Danny C. Reeves* DCR
United States District Judge