UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CIVIL ACTION  NO. 04-465-DCR

PIONEER RESOURCES CORPORATION,                      PLAINTIFF
A NEW YORK CORPORATION

VS.                            **MEMORANDUM AND ORDER**

NAMI RESOURCES COMPANY, LLC                         DEFENDANT

*******

    This matter is before the Court upon the "Motion to Compel" (DE#121) by the plaintiff ("Pioneer"). The Magistrate Judge has held telephonic conferences regarding discovery matters on May 17 and 26, 2006, and transcripts of same have been prepared. Having carefully considered the arguments of counsel and having fully reviewed the record, including the Motion to Compel (DE#121), Response (DE#120), and both Transcripts (DE#116, 118), the undersigned Magistrate Judge finds as follows:

    Civ.R. 26(b)(1) allows the discovery of any matter, not privileged, that is relevant, or appears reasonably calculated to lead to the discovery of admissible evidence.  Although that which is "relevant to the subject matter involved in the pending action" has been construed broadly, discovery has "ultimate and necessary boundaries."  *United States v. One Tract of Real Property*, 95 F.3d 422 (6th Cir. 1996), citing *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978).  "It is well-established that the scope of discovery is within the sound discretion of the trial court."  *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

    In the motion at issue, Pioneer seeks to compel the defendant ("NRC") to produce (A) all documentation evidencing its overall financial condition and offers to buy or sell the company, (B) certain property tax returns, (C) documentation evidencing NRC's overhead costs, (D) certain e-mails, (E) documentation evidencing NRC's alleged counterclaim damages, and (G) integration reports, master reports, and well upgrade documentation.

    With respect to A), Request No. 1 (from Plaintiff's Seventh Set of Requests) essentially asks for all documentation regarding offers to buy or sell NRC and the

entities or persons involved, while Request #4 asks for all documents identifying any persons with knowledge about such offers. Request #2 seeks all documents evidencing the "overall financial condition" of NRC. Defendant objects to Requests #1 and #4 as irrelevant and to Request #2 as overbroad. For the most part, the Magistrate Judge agrees.

Plaintiff contends that offers to buy or sell the defendant company may show "future profitability" and that this would be relevant to punitive damages, but cites no legal authority for such proposition. Defendant points to recent precedent in this circuit holding that "to serve as justification for a punitive damage award, a defendant's wealth must bear some relation to the harm sustained by the Plaintiff". *Clark v. Chrysler Corp.*, 436 F.3d 594, 604 (6th Cir. 2006). Plaintiff essentially contends that the defendant wrongfully overcharged plaintiff for expenses on four wells and then withheld revenue from those wells. Offers to buy or sell NRC would not be relevant to any claims presently before this court, nor would such information reasonably be expected to lead to the discovery of admissible evidence. The profits derived from operating over 800 wells not owned by plaintiff are simply not at issue here. Although plaintiff contends that the defendant's overall profitability is relevant to punitive damages, there is a significant difference between the profit derived from defendant's alleged misconduct regarding plaintiff's four wells and a generalized inquiry into how deep the defendant's pockets actually are, i.e. the defendant company's overall valuation and the profits from over 800 other wells managed/operated by defendant. The objections to Requests #1 and #4 as irrelevant will be sustained at this time.[1]

Request #2 asks for all documentation evidencing the "overall financial condition" of NRC. Defendant objects to this request as overbroad, burdensome, and duplicative of information already made available. Request #2, as worded, does appear to be overly broad in scope, although it does list various types of information that could be relevant to plaintiff's claims or may otherwise be discoverable, assuming such documents have not otherwise been produced. Still, plaintiff's request is so broad rendering it impossible to determine what documents would be responsive to the request, and thus, defendant's objection is well-taken.

With respect to B), plaintiff points out that NRC has not objected to production of the requested tax returns (2002-2005) for the subject wells. See

---

[1] Plaintiff has indicated that it wishes to amend its complaint to include four RICO claims. However, the Magistrate Judge will not speculate as to what discovery would be relevant to showing patterns of fraud under such statute. The present discovery order is based on the existing claims before the Court.

Request No. 1 from Plaintiff's Fourth Set of Requests. Plaintiff asserts that NRC has simply failed to produce these returns. The record reflects that NRC responded to the discovery request by indicating it would produce the 2003 and 2004 returns, but that it had not "located" the 2002 return. Such answer is inadequate. It is inconceivable that a company of NRC's size would not be able to locate a routine business record, such as the requested 2002 tax return. In its response (DE#120) to the motion to compel, NRC generally indicated that the requested property tax returns have been previously made "available", but is willing to produce them. However, providing limited access to independent accountants is not the same as producing properly requested documents to the plaintiff in discovery. The requested property tax returns relate directly to the plaintiff's claims and are fully discoverable.

With respect to C), plaintiff's Request No. 4 (from Plaintiff's Fourth Set of Requests) seeks documents regarding NRC's overhead costs. NRC has apparently asserted that such costs were either factored into the well price or charged as expenses to plaintiff's wells. Plaintiff asserts that if NRC charged it for overhead costs, it is entitled to see documents regarding such expenses. DE#119, TR 11. NRC rather inconsistently asserts it has already given "access" to such documents, but then generally objects to the request as overbroad and burdensome. Pioneer asserts that such documents have not been produced in discovery, and that access to such documents by the independent accountants was improperly restricted by defendant. Plaintiff's argument for production of any such calculations and /or documentation of overhead costs attributed to plaintiff's wells is sound. Defendant cannot asserts such costs and then withhold properly requested information about such costs. The fact that independent accountants may have had limited access to such documents does not relieve defendant of its obligation to properly respond to discovery requests in a timely manner. Documentation regarding overhead costs relates directly to the claims at issue and is certainly discoverable. Defendant has shown no reason whatsoever why such request would be burdensome or is purportedly "overbroad". Moreover, during the conference on May 26, 2006, NRC agreed to produce any analysis of overhead costs "if it exists". DE#119, TR 13.

With respect to D), plaintiff in Requests No. 9 and 11 (from Plaintiff's Fourth Set of Requests) seeks e-mails sent to Vickie Guess regarding integration services for plaintiff's wells, as well as e-mails sent or received by Vickie Guess regarding property tax filings during the relevant time period. Plaintiff aptly points out that these e-mails were discussed in the deposition of Guess and their existence is not in question. Moreover, NRC has not objected to their production, but has

simply failed to produce them. Although NRC now alleges it has not "found" them, it has not indicated any good faith efforts to locate them. The plaintiff's frustration with such response is justified. NRC shall make a good faith effort to locate these e-mails and then provide them to plaintiff. At the conference on May 26, 2006, NRC asserted that there were no e-mails to provide, even though they were discussed at deposition. If defendant is claiming that such documents cannot be retrieved, then defendant shall file a written statement by June 19, 2006 indicating all steps taken to obtain said e-mails and shall explain in detail why such documents cannot be retrieved. Failure to do so may result in sanctions being imposed.

With respect to E), plaintiff asserts that the defendant is over eight months late in complying with this discovery request. The record reflects that defendant has not asserted any objection and indicated during the conference that it will produce the requested documents regarding counter-claim damages to plaintiff by June 9, 2006.

With respect to G)[2], plaintiff's Requests No. 30, 31, 36 (from Plaintiff's Fourth Set of Requests) seek production of the integration well reports (#30), "master meter" reports ( #31), and documentation regarding any upgrades to the plaintiff's wells (#36), all of which were referred to during Mr. Nami's deposition. Defendant's initial argument that it does not know what "master reports" are is belied by the fact that it thereafter discusses the master meter reports for the wells, as plainly referred to by Mr. Nami in his deposition. DE#119, TR 20. Pioneer has consistently alleged that NRC has fraudulently altered relevant documents, overcharged plaintiff for well expenses, and fraudulently withheld revenues owed to plaintiff. Hence, the requested documentation is directly relevant to the expenses, production, and revenue of plaintiff's wells, and is discoverable.

Although NRC has argued that such request for documentation was "too broad", plaintiff has aptly pointed out that it has requested such information only with respect to its own four wells in three Kentucky counties (Knox, Whitley, and Clay). DE#199, TR 21-22. Contrary to defendant's bald assertion, the plaintiff has reasonably tailored its request to documents that pertain directly to plaintiff's own wells. Plaintiff's request is not overbroad and any such objection is overruled.

Although defendant claims much of this information has already been provided to plaintiff's "experts", plaintiff disputes this. Plaintiff points out that the accountants were hired under an agreed order and were independent, rather than

---

[2]The plaintiff's motion reflects a sequential skip to "G".

acting as plaintiff's experts at that time. Plaintiff also strongly contends that the defendant stymied much of the accountants' audit by screening and withholding relevant documents from the accountants and by refusing to sign a standard management representation letter indicating that the documents provided by NRC to the accountants were authentic and accurate. DE#119, TR 4-6. NRC has put forth no justification of any kind for its refusal to sign a standard management representation letter.

NRC does not object to production of documents under Request #36. In its initial discovery response, NRC merely indicated the documents would be produced at a "convenient" time. This is not an appropriate response under the discovery rules, and plaintiff contends that many months have passed with no production of documents. It should also be pointed out that NRC's allegations in its response to the motion to compel are quite inconsistent. For example, NRC indicates it has produced documents regarding upgrades to the plaintiff's four wells, but then states that if any upgrades to Mr. Morita's wells are found, they will be produced although none have been located so far. Defendant argues that information about other wells is not relevant and is confidential. In any event, defendant has previously argued that such information cannot be separated from the information about plaintiff's wells and cannot now contend otherwise. Plaintiff is undoubtedly entitled to all information concerning its own wells, and such information (even if it includes information about other wells) is likely to lead to the discovery of admissible evidence. Defendant's concerns about confidentiality regarding other wells have been previously addressed. To wit, the parties may submit an agreed confidentiality order, or in the absence of an agreed order, may submit proposed confidentiality orders for review by this Court.

Accordingly,

It is **ORDERED** that the "Plaintiff's Motion to Compel" (DE#121) is **GRANTED in part and DENIED in part as follows**:

A) the defendant's objections to Requests No. 1 and 4 (from Plaintiff's Seventh Set of Requests) as irrelevant are *sustained*; with respect to Request #2, the defendant's objection to the request as overbroad is *sustained*;

B) plaintiff's motion to compel defendant to comply with plaintiff's Request No. 1 (from Plaintiff's Fourth Set of Requests) for the property tax returns for the

plaintiff's four subject wells for the years 2002, 2003, 2004, and 2005 is *granted*; defendant shall furnish authentic copies of said documents to plaintiff no later than June 19, 2006;

C) plaintiff's motion to compel defendant to comply with plaintiff's Request No. 4 (from Plaintiff's Fourth Set of Requests) is *granted*; to the extent defendant has objected to such request as overbroad or burdensome, such objections are *overruled*;

D) plaintiff's motion to compel defendant to comply with plaintiff's Requests No. 9 and 11 (from Plaintiff's Fourth Set of Requests) is *granted*; the defendant NRC shall locate and furnish authentic copies of the requested e-mails no later than June 19, 2006;

E) to the extent defendant has not already produced the requested documents evidencing counter-claim damages, plaintiff's motion to compel defendant to comply with plaintiff's Request No. 24 (from Plaintiff's Fourth Set of Requests) is *granted*; any such documents not already furnished shall be provided to plaintiff no later than June 19, 2006;

G) plaintiff's motion to compel defendant to comply with plaintiff's Requests No. 30, 31, and 36 (from Plaintiff's Fourth Set of Requests) is *granted*; all such documentation shall be produced promptly or otherwise made available to plaintiff for inspection and copying not later than June 19, 2006.

This the 8th day of June, 2006.

Signed By:
**J.B. Johnson, Jr.**
United States Magistrate Judge